UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

HARIKLIA HONDROULIS, ET AL.,

    Plaintiffs,

v.                                                            Case No.  8:07-cv-257-T-24 TGW

HOMECOMINGS FINANCIAL, LLC,

    Defendant/Third-Party Plaintiff,

v.

AMERICAN TITLE AND ABSTRACT
COMPANY and SHANNON SMITH,

    Third-Party Defendants.
_____/

**ORDER**

This cause comes before the Court on Defendant's Motion for Summary Judgment (Doc. No. 32) against Plaintiffs. Plaintiffs and Third-Party Defendants oppose the motion. (Doc. No. 38, 39).

**I.  Standard of Review**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The Court must draw all inferences from the evidence in the light most favorable to the non-movant and resolve all reasonable doubts in that party's favor. See Porter v. Ray, 461 F.3d 1315, 1320 (11th Cir. 2006)(citation omitted). The moving party bears the initial burden of showing the Court, by reference to materials on file, that there are no genuine issues of material fact that should be

decided at trial. See id. (citation omitted). When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial. See id. (citation omitted).

## II. Background

Plaintiffs filed suit against Defendant Homecomings Financial, LLC ("Homecomings") after they attempted to pay off their mortgage and Homecomings returned their wired funds. Plaintiffs contend that Homecomings wrongfully refused their payoff and has thereafter been adding unwarranted fees and interest and has been misrepresenting the status of Plaintiffs' mortgage to credit reporting agencies.

The facts of this case are as follows: At the end of 2006, Plaintiffs requested a payoff statement from Homecomings. Plaintiffs received a payoff statement that advised them that as of November 1, 2006, the payoff amount for their mortgage was $196,229.82. (Doc. No. 32, Ex. A). The payoff statement also indicated that if payment was made after November 1, 2006, the payoff amount would increase by $40.71 in interest per day. (Doc. No. 32, Ex. A).

The payoff statement included instructions regarding how to pay off the mortgage. Specifically, the payoff statement provided that "[a]ny funds received MUST reference the Homecomings loan number." (Doc. No. 32, Ex. A). The payoff statement further provided that the mortgage could be paid off via a wire transfer to JP Morgan Chase Bank, and the payoff statement set forth the following directions for a wire transfer:

> We will not be able to process the payoff unless the LOAN NUMBER and the MORTGAGOR'S NAME identify the wire transfer. A copy of the payoff statement, amount of the wire and the completed address information on the payoff statement must be faxed the same day of the wire transfer to 1-214-874-

2

2061, Attention: Cashiering Dept.[1]

NOTE: Wired funds will be returned if we are unable to identify the loan intended to be paid off or if we determine funds to be insufficient to pay the loan in full.

(Doc. No. 32, Ex. A)(emphasis in original).

Plaintiffs directed American Title and Abstract Company ("ATAC") to pay off the mortgage via wire transfer pursuant to the directions in the payoff statement. On November 16, 2006, Shannon Smith, an employee of ATAC at the time, filled out a wire transfer authorization form ("WTA form"). On the WTA form, she indicated that $196,845.47[2] was being wired to JP Morgan Chase Bank from ATAC to payoff a mortgage with Homecomings. (Doc. No. 39, Ex. 1). Smith did not indicate the mortgage loan number or Plaintiffs' names on the wire transfer.

On the same day, Smith sent a fax to Homecomings' Cashiering Department. (Doc. No. 39, Ex. 3). On the cover sheet of the fax, Smith wrote: "See attached payoff statement. Wire sent to pay loan off in full for loan # 0440869709." (Doc. No. 39, Ex. 3). While the fax cover sheet did have ATAC's name and contact information, the fax did not indicate the amount of the wire transfer. (Doc. No. 39, Ex. 3).

Homecomings contends that when it received the wire transfer, it could not determine which loan was being paid off, and therefore, it rejected the wire transfer and returned the funds to ATAC on November 20, 2006. (Doc. No. 33: Kelly depo, p.69-72, 85-86, 97). The text of the message on the wire returning the funds to Bank of Tampa (ATAC's bank) was "SD RTN WIRE CAN T ID," which a Bank of Tampa electronic banking coordinator has interpreted to

---

[1]Homecomings requires that this information be faxed in order to help it identify a wire if the wire does not contain identifying information. (Doc. No. 33: Kelly depo, p 69-72).

[2]This amount is calculated as follows: $196,229.82 mortgage balance as of November 1, 2006, plus $40.71 in interest multiplied by 15 days, plus the $5 wire transfer fee.

mean "Sender, return of wire, can't identify." (Doc. No. 39, Ex. 5; Doc. No. 33: Swafford depo, p.37, 76).

Thereafter, Smith made numerous attempts to contact Homecomings to find out why the wire transfer was rejected, but Homecomings did not give her any information. (Doc. No. 39, Ex. 6). At some time after January 2, 2007, Smith forwarded the matter to Homecomings' lawyer, Lisa Wilcox, to resolve. (Doc. No. 39, Ex. 6). When Wilcox requested that Homecomings give her the contact information for Homecomings' legal department so that she could discuss Homecomings' decision to return the wired funds, Homecomings told Wilcox that it would not give her such information unless it was sued. (Doc. No. 38: Wilcox affidavit).

After the wire was rejected, Homecomings continued to add interest to the mortgage balance. (Doc. No. 33: Kelly depo, p.45-46). There is no evidence that Plaintiffs attempted to pay off the mortgage (including the additional fees and interest) after the November 16, 2006 attempted wire transfer, and Homecomings has begun foreclosure proceedings.

Plaintiffs filed suit against Homecomings, in which they assert four claims: (1) breach of contract, (2) slander of title, (3) false light, and (4) violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"). (Doc. No. 15). Thereafter, Homecomings filed a third-party claim against ATAC and Smith. (Doc. No. 23).

### III.  Motion for Summary Judgment

Homecomings has filed a motion for summary judgment on three of Plaintiffs' claims: (1) breach of contract, (2) slander of title, and (3) FDUTPA.[3] Plaintiffs oppose the motion, arguing that Homecomings wrongfully rejected the wire payoff of their mortgage, and as such,

---

[3] Homecomings did not move for summary judgment on Plaintiffs' false light claim.

summary judgment should be denied.

Upon review of the evidence submitted by the parties, the facts of this case show that Homecomings' return of the wire transfer was not wrongful, because its refusal was due to Plaintiffs'/ATAC's failure to follow the directions for making the wire transfer payment that was set out in the payoff statement. Plaintiffs argue that Homecomings' actions were wrongful, since the wire identified ATAC as the sender and Homecomings could have contacted ATAC with any questions regarding the identification of the loan being paid off. The Court rejects this argument. Plaintiffs have not submitted any case law to support their theory that Homecomings had a duty to investigate the identification information for the wire transfer, when Homecomings gave clear and specific instructions regarding the information that must be contained on the wire transfer and those instructions were not followed.

Plaintiffs also argue that Homecomings' payoff instructions were strictly followed, and they appear to argue that the payoff instructions were ambiguous regarding what information needed to be included in the wire. It appears that they are interpreting the payoff instructions as providing that the information identifying the wire transfer needed to be contained in the fax sent to Homecomings' Cashiering Department, not on the wire transfer itself. Their interpretation, however, is not reasonable.

The directions on the payoff statement provide: "<u>We will not be able to process the payoff unless the LOAN NUMBER and the MORTGAGOR'S NAME identify the wire transfer.</u> A copy of the payoff statement, amount of the wire and the completed address information on the payoff statement must be faxed the same day of the wire transfer . . .." Clearly, this language directs the paying party to include the loan number and mortgagor's name on the wire transfer.

5

However, even if the Court were to accept Plaintiffs' interpretation of the directions–that the identifying information for the wire transfer just needed to be contained in the fax sent to Homecomings' Cashiering Department–Plaintiffs still failed to comply with the payoff instructions directing that the amount of the wire be indicated in the fax. The faxed documents do not indicate that a wire transfer payment in the amount of $196,845.47 was made.

Plaintiffs also argue that Homecomings requires the faxed information as a back-up in order to help it identify a wire if the wire does not contain identifying information. (Doc. No. 33: Kelly depo, p 69-72). Therefore, Plaintiffs argue that between the wire (which identified ATAC as the sender paying off a mortgage) and the faxed information (which contained the loan number, payoff statement, and identified the sender as ATAC), Homecomings should have been able to deduce that the wire payment was made in order to pay off Plaintiffs' mortgage. The Court disagrees.

The flaw in Plaintiffs' argument is that Homecomings gets around 200 wires per day. (Doc. No. 33: Kelly depo, p. 85). In addition, since the faxed information from ATAC did not comply with Homecomings directions that the fax include the wire transfer amount, Homecomings could not definitively determine that the wire transfer and faxed information related to the same loan by simply comparing the faxed documents to the wire transfer. (Doc. No. 33: Kelly depo, p. 97-99). The only amount contained in the faxed information was the payoff amount as of November 1, 2006, and that amount was different from the amount actually due and paid via wire transfer on November 16, 2006.

The rejection of the wire on November 16, 2006 was consistent with the directions on the payoff statement, which were not followed by Plaintiffs/ATAC. Since the wire did not contain

identifying information and the faxed information did not contain the amount of the wire, Homecomings did not wrongfully refuse payment on November 16, 2006. Accordingly, the Court agrees with Homecomings that Plaintiffs have not submitted any evidence that shows that Homecomings breached a contract with Plaintiffs by refusing the wire transfer.

With regard to the slander of title claim, Plaintiffs argue that Homecomings has slandered their title by filing a foreclosure action and by lodging late payment complaints with credit reporting agencies despite the fact that Plaintiffs attempted to pay off the mortgage on November 16, 2006. Plaintiffs' argument is flawed. The Court has found that Homecomings' refusal of the wired funds on November 16, 2006 was not wrongful, and there is no evidence that Plaintiffs have attempted to pay off the mortgage (including the added interest charges) or made any further mortgage payments at any time after November 16, 2006. As such, Plaintiffs have not shown that Homecomings has slandered their title by making any *false* statements regarding the status of Plaintiffs' property.[4]

With regard to their FDUTPA claim, Plaintiffs argue that Homecomings engaged in deceptive and unfair practices when it wrongfully refused the wire transfer and then added additional interest and refused to discuss the matter prior to being sued. The Court disagrees that Homecomings' refusal of the wire transfer and its subsequent imposition of interest charges was wrongful, deceptive, or unfair, and as such, Plaintiffs have not shown that such acts can support a FDUTPA claim. However, Homecomings has not addressed whether its conduct after

---

[4]The elements required to state a claim for slander of title under Florida law are "that there has been a 'false and malicious statement, oral or written, made in disparagement of a person's title to real or personal property, or of some right of his, causing him special damage.'" Larson v. Correct Craft, Inc., 2005 WL 1902438, at *4 (M.D. Fla. Aug. 8, 2005)(quoting Old Plantation Corp. v. Maule Indus., 68 So. 2d 180, 181 (1953)).

it returned the wire transfer payment–specifically, its refusal to explain the return of the wire transfer payment during Smith's numerous phone calls and Homecomings' refusal to discuss with Wilcox the issue of the payoff and additional interest and fees that were imposed–can support a FDUTPA claim.  As such, the Court denies summary judgment to the extent that Plaintiffs' FDUTPA claim is based on Homecomings' conduct after it returned the wire transfer payment.

**IV.  Conclusion**

Accordingly, it is ORDERED AND ADJUDGED that:

(1)    Defendant's Motion for Leave to File Reply (Doc. No. 40) is **DENIED**.

(2)    Defendant's Motion for Summary Judgment (Doc. No. 32) is **GRANTED IN PART AND DENIED IN PART**: The Court **GRANTS** summary judgment in favor of Homecomings on Plaintiffs' breach of contract and slander of title claims; otherwise, the motion is **DENIED**.

**DONE AND ORDERED** at Tampa, Florida, this 19th day of December, 2007.

Copies to: Counsel of Record

SUSAN C. BUCKLEW
United States District Judge